UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,

Plaintiff,

v.

ASIA CLAIRE LITTELL,

Defendant.

Case No. 26-mj-98 (DWF/EMB)

**Ms. Littell's Memorandum in Support of Motion to Dismiss for Lack of Probable Cause**

---

Asia Littell has filed a motion asking the Court to look behind the charging document filed in this case. Ms. Littell recognizes that typically, an information, like an indictment, cannot be challenged for lack of probable cause. *United States v. Funk*, 412 F.2d 452, 455 (8th Cir. 1969). Yet these are not typical times. This is not the typical federal case. And Ms. Littell is not the typical federal target.

While judicial review of a charging document is uncommon, the Supreme Court has stated that dismissal of even grand-jury-returned-indictments might be appropriate if misconduct occurred in the charging phase. "[D]ismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988)). There is a limit placed on courts reviewing charging documents for this issue: prejudice to the defendant must have resulted. *Id*. at 255. ("A district court exceeds its

powers in dismissing an indictment for prosecutorial misconduct not prejudicial to the defendant.") *Id*. at 255.

The charging document filed in this matter was not subject to the procedural safeguards that normally adhere when a case is presented to a grand jury, because it was not presented to one. This case was also not submitted for judicial review of any kind. Nor did Ms. Littell agree to proceed by information, by waiving indictment. This means that the charging document in this case was not subject to any oversight at all: not by the grand jury, not by an independent judge, and not even by Ms. Littell agreeing to accept less process. Furthermore, the information in this case was signed, not by a known career prosecutor, but by a JAG attorney[1] who served in the District of Minnesota for a matter of weeks; and now has left the district.

## I.        Misconduct in DOJ Charging Decisions

On April 14, 2026, three days before the instant filing, Acting Attorney General Todd Blanche confirmed what has been apparent to many: that President Donald Trump is "deeply involved" in the Department of Justice. The Acting AG stated that President Trump "encourages or directs. . . the Department of Justice."[2]. For example, in November 2025, the President directed and encouraged the prosecution of political foes James Comey, Adam Schiff, and Letitia James by way of a social media post[3]. This—and many other

---

[1] The propriety of JAG attorney appearances (as a whole) are currently under review in *United States v. Paul E. Johnson*, 26-mj-81 (KMM/SGE) (ECF 24).

[2] https://www.nbcnews.com/politics/justice-department/todd-blanche-says-americans-happy-trump-deeply-involved-doj-rcna331691. Last Accessed April 16, 2026.

[3] https://www.nbcnews.com/politics/justice-department/trump-accidentally-posted-message-pressuring-pam-bondi-charge-enemies-rcna236830. Last accessed April 17, 2026.

examples—have led to a consensus among many that the investigative and charging powers of the DOJ are being used as weapons against opponents of the Trump administration. But it is not only high-profile individuals being caught up in the politicized charging of the DOJ. It is also everyday people: people like Ms. Littell and the many citizens charged with assaults on law enforcement officers in Washington, Chicago, and Los Angeles [4].

At a time like this, grand juries, and the gatekeeping function they fill by ensuring the government does not abuse their charging power, are more essential than ever in ensuring due process. And for their part, grand juries have been answering their call to duty. In "protestor cases" like Ms. Littell's, there have been an unusually high number of no bills returned.

> Asked about these failed indictments, Acting Attorney General Blanche stated,
>
> It could be that the grand jury just made the wrong decision . . . the grand jurors don't get everything right, just like nobody gets everything right all the time. So some of those, it's a tough case, and some of those we're continuing to investigate. You don't have to just take a 'no true bill' from a grand jury and walk away[5].

At another point in history, perhaps, this truism would not reflect misconduct. But in light of the transparent weaponization of the DOJ, what it shows is that the government is making a deliberate end run around safeguards in the law which exist only to ensure due process of law.

---

[4] https://www.ms.now/deadline-white-house/deadline-legal-blog/blanche-or-any-new-attorney-general-faces-same-obstacle-to-revenge-everyday-jurors. Last accessed April 17, 2026.
[5] https://www.nbcnews.com/politics/justice-department/todd-blanche-says-americans-happy-trump-deeply-involved-doj-rcna331691. Last accessed April 17, 2026.

Ms. Littell was one of numerous people hauled into federal court on a felony charge complaint. Many had their photographs taken. Many of those photographs were then posted on social media with statements by then-Attorney General Pamela Bondi that "failed to respect [defendant's] dignity and privacy, exposed [them] to a risk of doxxing, and generally thumbed its nose at the notion that defendants are innocent until proven guilty" all while "directly violat[ing] a court order sealing the case[s]." *United States v. Nitzana Flores*, 26-mj-57 (PAM/DJF) (ECF 26 at 2).

Days after this publicity stunt, rather than submit the evidence of a felony charge to a grand jury, the government decided to sign a misdemeanor information. Doing so meant the charging decision—and evidence—would be entirely insulated from due process safeguards. By filing an information, no law enforcement officer ever had to come to court and take an oath to tell the truth about the allegations in the felony complaint or the misdemeanor information. The charge never had to withstand judicial scrutiny. In fact, because the pleading was filed pursuant to Rule 7, the government did not even have to sign it under oath, as with a Rule 9 instrument. *Funk*, 412 F.2d at 456.

This snapshot of rampant misconduct in the DOJ's charging decisions at the national level supports the rare relief sought in this case. The Court should look behind the charging document to determine the issue of probable cause.

## II.    Misconduct in Minnesota

The information in this case arises at a unique point in Minnesota history. Never before have we seen government conduct quite like the conduct that was the baseline modus operandi for federal agents in the Twin Cities during Operation Metro Surge.

4

Violence at the hands of federal agents was rampant. Racial profiling substituted for legal cause to believe a person lacked citizenship. Renee Good and Alex Pretti, both American citizens, both opposing this administration's conduct, were shot dead by federal agents in a single month in Minneapolis. They were then labeled domestic terrorists on the national stage, by the highest members of this government. ICE agents shot a man in North Minneapolis, lied under oath about it—with charges only being dismissed short of trial by Senior Judge Magnuson[6]. A disabled woman was dragged from her car while on her way to a doctor's appointment[7]. A Hmong United States citizen was removed from his home half-dressed without any legal basis[8].

Government actors—both the Minnesota DOJ and federal agents—in this state are acting at the behest of the larger administration. Indeed, we have seen a mass exodus of the career prosecutors who refused to do that bidding. This administration has deemed certain individuals as targets—political opponents, yes, but also immigrants and people of color generally, and the people like Ms. Littell who stood up for them. The aggressive, unethical, and illegal tactics that have occurred in Minnesota have given rise to numerous motions alleging outrageous government conduct being filed in this District. Hennepin County has now charged a federal agent alleged to have committed second-degree assault during

---

[6] https://thehill.com/regulation/court-battles/5737914-charges-dropped-ice-officer-assault/. Last accessed April 17, 2026.
[7] https://www.democracynow.org/2026/4/17/minneapolis_lawsuit. Last accessed April 17, 2026.
[8] https://www.pbs.org/newshour/nation/minnesota-investigating-ices-arrest-of-hmong-american-man-as-possible-kidnapping. Last accessed April 17, 2026.

Operation Metro Surge[9] in state court—because the federal government in this District has refused to investigate any of the illegalities committed by federal agents.

It is in this extraordinary posture that the charges in this case arise. In order to accurately assess the merits of the instant motion, Ms. Littell respectfully submits that the Court must consider the actions of the DOJ under this administration, on both the national and the local level. After reviewing the evidence for the charge in this case, Ms. Littell asks the Court to find there is not sufficient probable cause and to dismiss the charge against her.

### III.    The Lack of Probable Cause in This Case Reflects Misconduct in the Charging Decision

Rule 12 allows parties to raise by pretrial motion any defense or objection that the court can determine without a trial on the merits. Fed. R. Crim. Proc. 12 (a). Pretrial resolution by the court may be appropriate when the facts are undisputed. *United States v. Grubb*, 135 F.4th 604, 607 (8th Cir. 2025). While the government will likely respond that they have additional evidence to present at trial, Ms. Littell submits that the Court has all of the "relevant factual evidence" to make a decision. *Id.* ("If a district court 'determines that the relevant factual evidence is 'undisputed in the sense that it 'is *agreed* to by the parties,' pretrial resolution may be appropriate because 'a trial of the general issue would serve no purpose'.").

---

[9] https://apnews.com/article/immigration-minnesota-federal-officer-assault-charge-3083400c9b7d45fea4170a6abee7d290. Last accessed April 17, 2026.

At the motions hearing, Ms. Littell submitted three exhibits. Defense Exhibit One and Two are body camera recordings of the incident at issue. This comprises all of the video evidence in this case. It is true that the government produced multiple *versions* of these same videos[10], but there is no additional video available. Defense Exhibit Three, includes multiple law enforcement reports, and contains the relevant testimonial evidence of the complainant in this case. Among other documents, Exhibit Three includes a report written by Agent Flores personally describing the alleged assault as well as a report written by the two HSI Agents who interviewed him. While it is not a verbatim transcript, it reports the main "substance" of Agent Flores' claim. Def. Ex. 3 at 8. All of this material was supplied by the government in discovery, and they did not object to the admission of these exhibits which comprise the factual record.

The body camera footage reflects that the interaction between Ms. Littell and Agent Flores lasted mere seconds. Despite that, in his interview, Agent Flores reported the following to HSI:

> During the chase, the offending subject, Asia C. Littell . . . riding their bicycle, maneuvered their bicycle to strike BPA Flores and block his [BPA Flores'] path towards the fleeing subject. BPA Flores stated that following the *initial strike* by Littell, Littell began to *continuously ram* him [BPA Flores] with the bicycle as he attempted to maneuver around Littell. BPA Flores ordered Littell to move. Littell did not comply with BPA Flores' order and *continued to ram* BPA Flores with the bicycle and block BPA Flores' path towards the fleeing subject. (emphasis added)

---

[10] At first, the government attempted to provide defense with truncated versions of these videos reflecting just what they believed was relevant but upon further discussions, produced the versions submitted to the Court.

Def. Ex. 3 at 9. The video evidence in this case, and the timing it reflects, belies any credible claim that Ms. Littell "initially struck", "continuously rammed", and then (again) "continued to ram" an agent with a bicycle.

The video also does not show that Ms. Littell "picked up the bicycle and began swinging it towards agents as a weapon attempting to cause bodily harm." *Id.* at 6. Having been sprayed directly in her eyes with oleoresin capsicum (OC) sprayed, her movement was not voluntarily or intentionally directed at agents. The video also does not show Ms. Littell "blocked the agent's path by dismounting a bicycle and manipulating the handlebars . . . to impede the agents (sic) path". *Id.* at 6. As is seen in the video evidence, Ms. Littell did not dismount her bike voluntarily; that she was forced off of it as she was begin tackled by agents.

Ms. Littell has been prejudiced by the government's misconduct in charging the case against her. Even if acquitted, Ms. Littell should not have to continue to suffer a federal prosecution or endure trial on this matter. She asks the Court to review the information based on the factual record before it and then dismiss the case for lack of probable cause.

Dated: April 17, 2026                                    Respectfully submitted,

    *s/Lisa M. Lopez*

Lisa M. Lopez
Attorney No. 395791
Attorney for Ms. Littell
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN  55415